UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Public Interest Legal Foundation,<br><br>*Plaintiff*,<br>v.<br><br>David Voye, Manager of Elections for Allegheny County, and Rich Fitzgerald, Bethany Hallam and Samuel DeMarco III, as Members of the Allegheny County Board of Elections in their official capacities,<br><br>*Defendants*. | Civ. No. 20-_2:20-CV-279 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Public Interest Legal Foundation ("Plaintiff" or "the Foundation"), by and through its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507, against David Voye, in his official capacity as Manager of Elections for Allegheny County, and Rich Fitzgerald, Bethany Hallam and Samuel DeMarco III, as Members of the Allegheny County Board of Elections in their official capacities. In support of its action, the Foundation states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

2.      Venue in this Court is proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3.      The Plaintiff, the Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan, non-profit, public interest organization incorporated and based in Indianapolis, Indiana. The Foundation seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation. The Foundation has dedicated significant time and resources to ensure that voter rolls in the County of Allegheny do not contain ineligible registrants. The Foundation produces and disseminates reports, articles, and newsletters in order to advance the public education aspect of its organizational mission as well as communicates with election officials about problems or defects found in list maintenance practices and about ways to improve those practices.

4.      The Foundation has spent thousands of dollars reviewing Allegheny County's election procedures and documented failures to maintain an accurate and correct voter roll, and issued a report nearly two years ago uncovering erroneous registrations and registrants who were deceased or otherwise ineligible.  In its report, titled "Steeling the Vote," the Foundation expended significant resources to identify countless problems with the County's voter registration system, largely involving the presence of self-reported non-citizens on Allegheny County voter rolls.  The Foundation's investigation of the rolls, both then and now, include the cost to compare the voter roll to various commercial databases in order to identify deceased voters,

ineligible registrants and those ineligible due to change of address as well as time and travel to do the same.

5. Defendant David Voye is the Allegheny Manager of Elections. Defendant Voye directly manages list maintenance practices and is responsible for the correct and accurate management of Allegheny County's voter registrations including the approval of registration applications pursuant to 25 PA. C. S. § 1328 (LEXIS 2019),[1] and for list maintenance programs pursuant to 25 PA. C. S. § 1901.

6. Defendants Fitzgerald, DeMarco and Hallam are Allegheny County Commissioners who serve as the Allegheny County Board of Elections with supervisory authority over Defendant Voye. 25 PA. C. S. § 2641.

7. The County Board of Elections and its Commissioners have jurisdiction over the registration of applications, qualified electors and registered electors of the county. 25 PA. C. S. § 1203.

## STATEMENT OF FACTS AND LAW

8. Section 8 of the NVRA requires election officials to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant[.]" 52 U.S.C. § 20507(a)(4).

9. Section 8 of the NVRA also requires that election officials shall "complete, not later than 90 days prior to the date of a primary or general election for Federal office,

---

[1] All citations to Pennsylvania state law are to the Pennsylvania Statutes Annotated by LEXIS 2019, unless otherwise indicated.

any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). Section 8 of the NVRA mandates that any such list maintenance programs or activities "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (52 U.S.C. § 10301 *et seq.*)." 52 U.S.C. § 20507(b)(1).

10. The Pennsylvania Election Code, codified at Title 25 of the Pennsylvania Consolidated Statutes, vests responsibility for list maintenance on the Defendants and states that county "[c]ommissions shall institute a program to protect the integrity of the electoral process and to *ensure the maintenance of accurate and current registration records.*" 25 PA. C. S. § 1901(a) (emphasis added).

11. Defendants are statutorily responsible to institute a list maintenance program that complies with the Voting Rights Act of 1965 and the National Voter Registration Act of 1993.  25 PA. C. S. § 1901(a).

12. Defendants must establish by statute a registrant removal program that identifies registered electors whose address has changed.  25 PA. C. S. § 1901(b).

13. Defendants must also establish a registrant removal program that sends a notice to any registered elector "who has not voted nor appeared to vote during the period beginning five years before the date of the notice and ending on the date of the notice and for whom the board of elections did not during that period in any other way receive any information that the elector still resides in the election district." 25 PA. C. S. § 1901(b)(3).

14. According to Pennsylvania law, the "commission shall cancel the registration of a registered elector reported dead by the Department of Health. The Department of Health shall, within 60 days of receiving notice of the death of an individual 18 years of age or older, send the name and address of residence of that individual to a commission in a manner and on a form prescribed by the department. The commission shall promptly update information contained in its registration records." 25 PA. C. S. § 1505(a).

15. The commission may also utilize published newspaper obituaries, letters testamentary or letters of administration issued by the office of the registrar of wills to cancel and remove the registration of an elector, provided that such removals are uniform, nondiscriminatory and in compliance with the Voting Rights Act of 1965. The commission shall promptly update information contained in its registration records. 25 PA. C. S. § 1505(b).

16. The commission is also required by statute "to correct an error or irregularity in registration and cancel the registration of an individual whom it finds to be improperly registered…." 25 PA. C.S. § 1203(h).

17. Finally, the commission must also ensure that just <u>one</u> Statewide Uniform Registry of Electors ("SURE") registration number is assigned to each registrant. "Whenever a registered elector's name is changed for any reason, the registered elector's SURE registration number shall remain the same, and the file shall reflect the former name change to the new name." 25 PA. C.S. § 1203(h).

5

**Duplicates, Triplicates, Quadruplicates and a Septuplicate Voter Registration**

18. The Foundation reviewed the County's official voter registration list (hereinafter "County's voter registration list") that was provided to the Foundation in October 2019.

19. The Foundation identified 3,727 sets of records that are apparent duplicate, triplicate and quadruplicate voter registrations for the same people, in direct violation of 25 PA. C.S. § 1203(h); 52 U.S.C. § 21083(a)(1)(A)(iii); and 25 PA. C. S. § 1901(a). That is, the same individual was registering to vote three or four times.

20. One registrant, Mr. Rashawn Slade, currently has <u>seven active registrations</u>, each with a different voter identification number, despite registering with the exact same address, same date of birth and same name. Mr. Slade submitted at least seven applications to register in a short period of time apparently as a result of a third-party registration drive conducted by an out-of-state organization.

21. Hundreds of other registration records have slightly different or missing information but are otherwise exactly the same, again creating hundreds of individuals actively registered to vote multiple times. Such records include 443 sets of conflicting records with <u>middle names spelled differently or absent on one</u>, such as Cary Dewayne Heard, registered a second time as Cary D. Heard at the same address with the same birthdates.

22. The Foundation uncovered 587 sets of conflicting records with <u>birthdates either missing or having a single digit transposed in one of two records</u>, such as in the case of Marcella Williams, who is registered twice under the same name and address but

6

whose birthdate is 8/26 in one file and 8/28 of the same year in the other; Jerome Morant, registered twice at the same address, same full name but with birthdates of 3/02 and 5/02 of the same year; and Elizabeth Murray, registered twice at the same address, same full name but with birthdates of 9/20 and 9/28 of the same year.[2]

23.     The Foundation also found 507 sets of records with <u>obvious clerical input errors</u> that instead of being identified as such, triggered the creation of a brand-new duplicative voting record.  This happened with the registrations of Namir Khandker, who has two registration files, despite registering using the same address and birthdate.  He is listed both as Namir Khandker and Namir Khanbker, yet all other information is the same such as full birthdate and registration address. Also registered twice despite the same address and birthdates are Emily E. Rainer/Reiner; Ravi Mehta/Menta; Justin Lindsey/Lindsay; Richard Burrell/Gurrell; Lindsey Cullers/Cullars; Brandon Blackmon/Blackman; and Rochelle Delancey/De Lancey.

24.     Even more concerning is that the Foundation also found 256 sets of simple <u>duplicate registrations with no discernable differences between them</u>; including two files for Rita A. McCray, who is registered twice with the exact same full birthdate and residence address; Lorraine Rae Smith, again registered twice with the exact same address, name and birthdate; Mystasia Hunter, registered twice with the same

---

[2] In an effort to comply with LCvR 5.2, Plaintiff is not here providing the full date of birth.  The full date of birth, however, is relevant to the question of whether a particular registrant is registered multiple times.  Indeed, a variety of personally identifying information that should not be filed pursuant to LCvR 5.2(D) directly bears on the issues in this Complaint and are public information under the National Voter Registration Act notwithstanding LCvR 5.2.

information; Joanne Tomco; Danielle Sims; Amir Harris; Alexis T. Johnson; Sarah Jane Mayberry; Julian A. Hurt and Christopher Taylor-Jones, and 246 other registrants who are actively registered twice for no apparent reason.

25.     The County's voter registration list also contains 24 confirmed examples of <u>triplicate registrants</u> including three different active registrations for Brenda M. Gossett. Gossett was erroneously registered by the Defendants three times at the same address, including once as Brenda M. Cossett at the same address. Preston F. Dennis also was registered three times at the same address by the Defendants. Anam Hussain also was registered three times at the same address by the Defendants, along with 21 other instances of a registrant being erroneously added to the voter roll for a second and third time.

26.     The County's voter registration list even contains 4 cases of <u>quadruplicate registrations</u>; in other words, the same person has four different registration files.  One example is Stephanie M. Robinson, who has 4 separate registration files, three with her full name, and one with her middle initial instead of her full middle name.  Her birthdate is the same in three and one digit off in the fourth. Her address is the same in all four.

27.     When the County erroneously maintains multiple active voter registration files for one registrant, it becomes possible for each active registration to be issued a mail-in or absentee ballot without detection.  Errors in the registration process and failure to have a reasonable list maintenance program produce vulnerabilities in the election system that the National Voter Registration Act was specifically intended to address.  52 U.S.C. § 20501(b)(3) and (b)(4).

28.     A registration list that contains active duplicate registrations is strongly suggestive of a failure to implement even the most basic safeguards to create a reasonable list maintenance program. Defendants are not conducting the reasonable list maintenance activity of identifying existing registrations when adding or updating a new registration, nor are they consolidating or canceling previous registrations if found, in violation of 25 PA. C. S. § 1328(a)(2)(iii); § 1328(c)(1); 52 U.S.C. § 21083(a)(1)(A)(iii).

### Thousands of Deceased Electors Remain On the Registration List

29.     The Foundation reviewed birthdates from a portion of the County's voter registration list against records in the Social Security Death Index. After matching other biographical information, the Foundation found 1,583 deceased registrants whose registrations should have been canceled, yet they remain actively registered to vote in the County.

30.     Several deceased registrants have been deceased for *decades*; one even died in 1990, yet remains on the roll.[3] This indicates a failure, or complete lack of, a systematic list maintenance program to ensure that the County is investigating and acting on official death notices that it receives from the Department of Health.  *See* 25 PA. C. S. § 1505(a) (requiring the Department of Health to send death notices to county election officials within 60 days of receiving a death report).

31.     Pennsylvania law also provides that Defendants "may also utilize published newspaper obituaries, letters testamentary or letters of administration issued by the office

---

[3] See Voter ID Record 002158271-02.

9

of the registrar of wills to cancel and remove the registration of an elector … [t]he commission shall promptly update information contained in its registration records." 25 PA. C. S. § 1505(b). The enormous number of deceased registrants who remain on the roll indicates a failure of Defendants to utilize any such program to remove deceased registrants. Indeed, Defendants are not utilizing the procedures statutorily available to them to detect deceased registrants who are active on Defendants' rolls.

### Implausible Birthdates

32. The Foundation reviewed the County's voter registration list for registrants with birthdates dated over 100 years ago and found 1,523 such birthdates. Among those were 49 birthdates from the 1800s, half of which are also listed as current "Active" registrations, including registrations for Lisa Marie Olsen whose birth year is listed as 1892, and Lisa M. Richetti, who the County believes was born in 1890.

33. While some information requested on the application is not required for the application to be accepted, including the designation of a political party, the submission of the applicant's birthdate on a voter registration application is <u>required</u> under Pennsylvania law before the Defendants are allowed to accept an application. See 25 PA. C. S. § 1327(a)(v)-(viii).

### Fake Placeholder Data is Fraudulently Being Used to Register Incomplete Applications

34. In addition to implausible birthdates, another 1,178 dates of birth were listed as "01/01/1800," which is clearly inaccurate. Intentional use of such "placeholder"

dates creates an instant objectively incorrect registration record. Systematically maintaining inaccurate voter registrations is a violation of the NVRA.

35. In addition to the "placeholder" birthdates, the Foundation discovered another 84 sets of records that contain other types of "placeholder" information such as fictitious registration dates of "01/01/1900."

36. Implausible birthdates and placeholder birthdates of 01/01/1800 are strong evidence that systematic maintenance efforts are not being conducted in Allegheny County. Placeholder information prevents the Defendants from having a reasonable list maintenance program because it is impossible to detect when the individuals associated with those placeholder-tainted registrations die, move or register multiple times. Defendants make no effort to cure or improve placeholder data, and thus the existence of placeholder data infects the entire effort to maintain accurate registration rolls.

### Thousands of Duplicate Records Flagged for Containing Erroneous Name Change Information

37. In addition to deceased registrants, and those listed with birthdates from the 19th century, the Foundation identified 7,493 voter registration records that contain erroneous information stemming from the County's failure to correctly process name changes.

38. For example, there are 1,603 sets of double voter registrations for females that contain exact matches to first and middle names, birthdates and addresses, but the last names differ from one registration to another—a common occurrence with marriage. Yet, despite the fact that all other information, including the address, is the same, it

appears that new records were created rather than updating and merging the existing record. Examples of this include Amber Dawn Cope who has two registrations, with the second being Amber Dawn Linder, both registered at the same address and having the same birthdate; Nichelle Lee Conn, also registered as Nichelle Lee Sobolak, both at the same address and having the same birthdate.

39. Other duplicitous registrations, such as two active registrations for Renu J. Parmar-Hoffmann and Renu J. Parmar Hoffmann, appear to have been erroneously created when the last name was entered as hyphenated in one instance, but without hyphenation in the other. The same appears true for Mindy A. Mackins-Morton, registered a second time as Mindy A. Mackins Morton; Margo Baker Victor and Margo Baker-Victor; and Jacqueline McCoy-Frazier and Jacqueline McCoy Frazier.

40. As a result, approximately 800 registrants who underwent a name change have more than one registration record, and more than one Voter Unique Identification Number ("VUID") assigned to them, in clear violation of law. 25 PA. C. S. § 1328.1 ("Each registered elector shall be assigned a single and unique SURE registration number in accordance with sections 1328 (relating to approval of registration applications) and 1514 (relating to conversion of registration records)."); HAVA 52 U.S.C. § 21083(a)(1)(iii) ("Under the computerized list, a unique identifier is assigned to each legally registered voter in the State.").

### Invalid and Corrupt Addresses Fraudulently Being Used to Register Voters

41.     The County's voter registration list contains registrants who have no Pennsylvania address listed at all and instead list an out of state official residential address.  Examples include Nathan Kovar, whose active Allegheny County voter registration file contains only an address in Washington, D.C., Ji Chancy, who identified only an address in Bethesda, Maryland as his residence, and Ariel Zucker, whose address is in Brooklyn, New York.[4]

42.     Maintaining active voter registration files for those ineligible to vote in the County, or state for that matter, is not in compliance with statutory list maintenance practices.  25 PA. C. S. § 1327(a)(ii) requires a Pennsylvania address on the registration application, and 25 PA. C. S. § 1327(b)(iii) requires a statement from the applicant that he "shall have resided in this Commonwealth and in the election district for at least 30 days."  Moreover, approval of an application can only occur when the applicant is a qualified elector. 25 PA. C. S. § 1328(a)(iii).

## Inflated Registration Rates

43.     According to the U.S. Census Bureau, as of July 2018,[5] the County's total voting age population (18 and older) was 990,602.

---

[4] It is unclear whether these registrants fall into some haphazard category established by Defendants of permanent UOCAVA voter.  See the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) 52 U.S.C. §§ 20301-20311.
[5] http://www.census.gov/quickfacts/fact/table/alleghenycountypennsylvania,US/PST045219 (last accessed Jan. 6, 2020).

44. In its report to the Election Assistance Commission, the County reported a total of 941,028 voter registrations for the same time period.[6]

45. Based on this data, the County had a registration rate of over 95% in 2018.

46. Because the voting age population identified by the U.S. Census Bureau *includes those who are ineligible to vote*, such as non-citizens, the true registration rate was likely higher than 95%.

47. According to the County's official voter registration list of eligible voters published by the Pennsylvania Department of State in October 2019, the County's registrations increased from 2018 by just over 11,000 registrations to a total of 952,815.

48. Although 2019 census data for the County has yet to be published by the U.S. Census Bureau, other demographic data published for Pennsylvania indicates that the population of Allegheny County has been steadily *decreasing* each year since 2014 by an average of 2,000 to 4,000 people.[7]

49. Even in the unlikely event that the population remained the same and the County did not lose any residents between 2018 and 2019, the County would have had a registration rate of 96% in 2019.

---

[6] *See* EAVS Datasets Version 1.1 (released October 22, 2019), available at https://www.eac.gov/research-and-data/datasets-codebooks-and-surveys (last accessed Jan. 16, 2020).
[7] https://www.pennsylvania-demographics.com/allegheny-county-demographics (last accessed Jan. 17, 2020).

50. Allegheny County's inflated registration rates are indicative of obsolete and inaccurate registrations, including registrants who are ineligible by reason of death, relocation, or non-U.S. citizenship.

## Statutory Notice Given to Defendants

51. On January 15, 2020, the Foundation sent a statutory notice letter addressed to the Allegheny Election Board Defendants notifying them that Allegheny County was in violation of the NVRA. A true and accurate copy of the statutory notice letter is attached hereto as **Exhibit 1** (hereinafter "Notice Letter"). The Notice Letter informed Defendants "that Allegheny County is not in compliance with the requirements of Section 8 of the National Voter Registration Act of 1993 ("NVRA")." Exhibit 1, at page 1. The Notice Letter explained that the Foundation's "review of Allegheny's official registration list indicates that [Defendants] office is not making a reasonable effort to remove the names of deceased registrants, as required by the NVRA." *Id*. at page 3.

52. The Notice Letter also included a request to inspect certain list maintenance records pursuant to the NVRA. *Id*. at pages 5-7.

53. Pursuant to 52 U.S.C. § 20510(b)(1), the Foundation gave notice via certified mail to the Pennsylvania Secretary of the Commonwealth who is the chief election official of Pennsylvania. *Id.* at page 7.

54. Due to the impending primary election date of April 28, 2020, federal law requires that Defendants cure any NVRA violations within 20 days from the date they receive the Notice Letter or face potential litigation. 52 U.S.C. § 20510(b)(2).

55. The Notice Letter stated that a lawsuit may be brought to ensure compliance with the requirements of the NVRA. *Id.* at page 2.

56. The Notice Letter was sent to each Defendant via USPS certified mail with return receipt requested. The Foundation received confirmation that each was delivered and signed for between the dates of January 21 - January 22, 2020.

57. The Foundation received a response from Defendants' counsel on January 24, 2020, several days past the dates the Foundation had offered to meet with Defendants.

58. On February 4, 2020, which was the last day of the 20-day curative period, representatives from the Foundation traveled to Pittsburgh to meet with Defendants to discuss what, if any, curative steps had been taken to correct the errors the Foundation had identified in its Notice Letter.

59. The parties were not able to agree on a remedial plan to address the failures in the list maintenance program discovered by the Foundation.

60. None of the NVRA violations about which the Foundation notified the Defendants had been cured as of February 4, 2020, nor had any procedures been systematically implemented to cure the list maintenance problems discovered by the Foundation.

61. The Foundation presented a written remedial plan and provided it to Defendants' counsel electronically on Monday, February 10 for review and input.

62. On Wednesday, February 12, representatives of the Foundation again traveled to Pittsburgh *a second time* to meet with Defendants in good faith to discuss remedies to cure deficiencies in the Defendants' list maintenance programs.

63. The Foundation and Defendants did not reach any agreement and no changes to the Defendants' list maintenance program were implemented.

64. Defendants have made no programmatic changes to their list maintenance program and have refused to provide any counter-proposals to the Foundation's proposed remedial plans and thus the parties reached an impasse in the curative period before filing this action.

65. The Foundation has spent considerable time and financial resources in an attempt to amicably bring the County's voter registration list into compliance with state and federal law. It has expended great time and effort and incurred significant travel costs, data costs, as well as costs for outside counsel in an effort to improve the County's list maintenance program.

66. Defendants' violations of the NVRA list maintenance requirements have harmed and continue to harm and frustrate the Foundation's purpose of ensuring that states comply with federal and state list maintenance laws as well as the Foundation's purpose to "protect the integrity of the electoral process and to ensure that accurate and current voter registration rolls are maintained." *See generally* § 20501(b)(3) and (b)(4) (Foundation's organizational purposes are synonymous with private right of action provisions of the NVRA).

## COUNT I

### Violation of the NVRA: Failure to Conduct List Maintenance

67. The Foundation re-alleges paragraphs 1 through 66 as if fully stated herein.

68. Defendants have failed to make reasonable efforts to conduct voter list maintenance programs that ensure that the deceased, those who have moved and those who are ineligible *ab initio* are not active registrants, in violation of Section 8 of NVRA, 52 U.S.C. § 20507.

69. The Foundation has suffered an irreparable injury as a direct result of Defendants' violation of Section 8 of the NVRA, 52 U.S.C. § 20507. Defendants' failure to comply with the NVRA has aggrieved and continues to aggrieve Plaintiff by impairing its essential and core mission of fostering compliance with federal election laws, promotion of election integrity and avoiding vote dilution when ineligible voters participate in elections. Defendants' failure to comply with the NVRA has caused and continues to cause Plaintiff pecuniary injury and frustrated the organization's purposes.

70. Plaintiff will continue to be injured by Defendants' violations of Section 8 of the NVRA because confidence in the legitimacy of elections in the County will be undermined unless and until Defendants are enjoined from continuing to violate the law.

71. The Foundation has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, the Foundation prays for entry of a judgment:

1. Declaring Defendants to be in violation of Section 8 of the NVRA;
2. Ordering the Allegheny County Defendants to immediately investigate the inaccurate registrations identified by Plaintiff and remove confirmed ineligible registrants from the voter roll prior to the April 28, 2020 national primary election;

3. Ordering Allegheny County Defendants to implement reasonable and effective registration list maintenance programs to cure the violations identified herein and bring Allegheny County into compliance with Section 8 of the NVRA;

4. Ordering the Defendants to pay the Foundation's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and,

5. Granting the Foundation further relief that this Court deems just and proper, including potential preliminary injunctive relief to ensure that Defendants' failures to comply with Section 8 of the NVRA are cured prior to the 2020 primary and general elections.

Dated: February 24, 2020

        Respectfully submitted,

        For the Plaintiff Foundation:

        /s/ *Linda A. Kerns*
        Law Offices of Linda A. Kerns, L.L.C.
        1420 Locust St., Ste. 200
        Philadelphia, PA 19102
        Tel: (215) 731-1400
        Fax: (215) 701-4154
        linda@lindakernslaw.com

        J. Christian Adams*
        PUBLIC INTEREST LEGAL FOUNDATION
        32 E. Washington Street, Suite 1675
        Indianapolis, IN 46204

Tel: (317) 203-5599
Fax: (888) 815-5641
adams@publicinterestlegal.org
*Application for Admission Pending*