# EXHIBIT 1

# PUBLIC INTEREST
## —— LEGAL FOUNDATION ——

*VIA EMAIL or FACSIMLE AND CERTIFIED MAIL*                    January 15, 2020

**Honorable John DeFazio**
**Honorable Kathryn M. Hens-Greco**
**Honorable Thomas Baker**
Allegheny County Board of Elections
604 County Office Building
542 Forbes Avenue
Pittsburgh, PA 15219
Email: boe@alleghenycounty.us

**David Voye**
Division Manager, Elections Division
604 County Office Building
542 Forbes Avenue, Room 604
Pittsburgh PA 15219
Email: david.voye@alleghenycounty.us

      Re:    **Statutory Notice of Violation of National Voter Registration Act**
              **Request for Records under National Voter Registration Act**
              **Request for Meeting**

Dear Mr. DeFazio, Ms. Hens-Greco, Mr. Baker, and Mr. Voye,

I am writing pursuant to 52 U.S.C. § 205010(b) to notify you that it appears to us that Allegheny County is not in compliance with the requirements of Section 8 of the National Voter Registration Act of 1993 ("NVRA"). This federal statute requires election officials to make a reasonable effort to maintain voter registration lists that are free of dead registrants and registrants who have moved to other jurisdictions, and to systematically remove the names of other ineligible registrants. 52 U.S.C. §§ 20507(a)(3), (4)(A)-(B), 20507(c)(2)(A)-(B).

You are receiving this letter because, as Allegheny County's election officials, you are responsible under state and federal law for maintaining accurate and current voter registration lists. We believe the problems identified in this letter can be resolved amicably. **We therefore request a meeting with the Allegheny County Elections Division** to discuss our findings, identify why the violations are occurring, inspect supporting list maintenance records and confirm how you plan to bring Allegheny County into compliance with state and federal law. We are hopeful that we may reach a curative plan so that we do not need to initiate litigation to cure these defects.

2. <u>Deceased Registrants and Implausible Dates of Birth</u>

Our review of Allegheny's official registration list indicates your office is not making a reasonable effort to remove the names of deceased registrants, as required by the NVRA. 52 U.S.C. § 20507(a)(4)(A). Using the County's official voter roll extract from October 2019, we identified more than 1,500 registrants aged older than 100 years (i.e. with years of birth listed as 1919 or earlier). Within this set, 49 registrants are listed with dates of birth **in the 19th Century.** The oldest of these registrants is listed as being born in January 18, 1800, which would make him almost 220 years old.

We matched a number of these active registrants with implausible birth dates against various data sources containing records of death, primarily the Social Security Death Index. Our comparison yielded a substantial number of strong matches showing that active registrants remain on your rolls after they die. The County roll currently contains at least 1,580 registrants who are matched against the SSDI or published obituaries with corresponding dates of death on file at various credit reporting bureaus.

But our concern does not extend only to implausibly high registration rates and failure to remove deceased registrants.

3. <u>In-county Duplicate Registrations</u>

Our analysis also found apparent duplicate registrations (or more) for the same person. Federal law requires that list maintenance be "conducted in a manner that ensures that … duplicate names are eliminated from the computerized list" of registrants. 52 U.S.C. § 21083(a)(2)(B)(iii). Furthermore, Pennsylvania law places an affirmative duty on elections officials to use the SURE System to confirm whether an applicant has an existing registration. 25 Pa.C.S. § 1328(a)(2)(iii); *see also* Pa.C.S. § 1328.1 ("Each registered elector shall be assigned a *single* and unique SURE registration number….) (emphasis added). The SURE System was explicitly designed, in part, to allow election officials to "[i]dentify duplicate voter registrations on a countywide and Statewide basis." Pa.C.S. § 1222(c)(17).

Notwithstanding these legal obligations, the Foundation identified more than **3,700** sets of matched voter registrations in Allegheny County. Among these, we identified matches deriving from married/maiden name confusion, middle name errors, date of birth errors, clerical mistakes, and even cases of triplication, quadruplication, and in the following instances, septuplication. All of these relied on the common denominator of exact match residential address identifiers in single-family residences or confirmed single units within multi-family buildings.

3

## I. Notice of Violations and Curative Period

**This letter serves as your statutory notice pursuant to 52 U.S.C. § 20510(b) of violations of Section 8 of the NVRA, 52 U.S.C. § 20507.**

A primary election for federal office is currently scheduled in Pennsylvania for April 28, 2020.[1] Because the ongoing violations described herein are occurring within 120 days of an election for federal office, **you may face federal litigation if the violations are not cured with 20 days of your receipt of this letter. 52 U.S.C. § 20510(b)(2).**

As required by 52 U.S.C. § 20510(b)(1), Secretary Boockvar, Pennsylvania's chief election official,[2] is receiving this same notice of the NVRA violations described herein.

## II. Evidence of Inadequate List Maintenance

### 1. Allegheny's Implausible Registration Rate

According to the U.S. Census Bureau, Allegheny County's total voting-age population (18 and older) is 990,601, as of July 2019.[3] According to the official list of eligible voters published by the Pennsylvania Department of State in October 2019, Allegheny County has 952,815 persons registered to vote, as of October 2019. Based on this data, Allegheny County has a registration rate **over 96%.** However, Allegheny County's true registration rate is certainly even higher because the total voting-age population used to calculate this registration rate includes individuals, such as non-citizens, who are ineligible to register and vote in Pennsylvania. 25 Pa.C.S. § 1301(a).

Federal courts have found that impossibly or implausibly high registration rate creates an inference that an election official has neglected her duty to reasonably maintain an accurate and current voter registration roll. *See Am. Civ. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 793 (W.D. Tex. 2015) (finding a "strong inference"); *Bellitto v. Snipes*, 302 F. Supp. 3d 1335, 1358 (S.D. Fla. 2017) (finding a "reasonable inference"); *see also Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, 301 F. Supp. 3d 612, 620 (E.D.N.C. 2017). That is because inflated registration rates are indicative of obsolete and inaccurate registrations, including registrants who are ineligible by reason of death, relocation, or non-U.S. citizenship.

Extreme registration rates undermine public confidence in the electoral process and should therefore prompt election officials to use all available tools and technologies to address the problem.

Our concerns do not extend only to implausibly high rates of registration.

---

[1] https://www.votespa.com/About-Elections/Pages/Election-Calendar.aspx (last accessed Jan. 6, 2020).

[2] 52 U.S.C. § 20509; *PILF v. Boockvar*, 370 F. Supp. 3d 449, 457 (M.D. Pa. 2019); 25 Pa. Stat. Ann. § 2621.

[3] https://www.census.gov/quickfacts/fact/table/alleghenycountypennsylvania,US/PST045219 (last accessed Jan. 6, 2020).

| VUID | LAST NAME | FIRST NAME | MIDDLE NAME | SEX | BIRTH DATE | PARTY | HOUSE # | ADDRESS 1 |
|---|---|---|---|---|---|---|---|---|
| 109115390-02 | SLADE | RASHAWN | A | | | | | |
| 109420839-02 | SLADE | RASHAWN | | | | | | |
| 109420913-02 | SLADE | RASHAWN | | | | | | |
| 109420966-02 | SLADE | RASHAWN | | | | | | |
| 109420981-02 | SLADE | RASHAWN | | M | | | | |
| 109421165-02 | SLADE | RASHAWN | | | | | | |
| 109421329-02 | SLADE | RASHAWN | | | | | | |

Rashawn Slade, as you can see from the above graph, enjoyed seven separate active registrations. Five of Mr. Slade's active registrations utilize the same birth date. All of the registrations for Rashawn Slade are at the same address—7438 Irvine Street. All seven registrations for Rashawn Slade have unique voter identification numbers.

This is precisely the circumstance which the federally mandated statewide database was designed to prevent.

This suggest a harmful mix of large-scale human error and technical failures is at play. These results indicate your office is not doing an adequate job checking for existing registrations and/or not cancelling previous registrations when found.

The NVRA and Pennsylvania law require your office to make a reasonable effort to remove the names of registrants who have moved to a different jurisdiction or failed to respond to official mailings. 52 U.S.C. § 20507(a)(4)(B); Pa.C.S. § 1901. When the same registrant is listed more than once on the official list of eligible registrants, it risks the possibility that the duplicate entry will not be flagged for cancellation. In that regard, Allegheny's failure to identify and investigate duplicate registrations is not "reasonable," in violation of the NVRA. 52 U.S.C. § 20507(a)(4).

Our concerns go well beyond individuals having up to seven active registrations.

4. Interstate Duplicate Registrations

Allegheny County registration records were cross-referenced with registration records in Palm Beach County, Florida. This analysis returned 438 likely matches between the two jurisdictions. Under Pennsylvania law, an individual who "goes into another state and, while there, votes in an election held by that state, the individual shall be considered to have lost residence in this Commonwealth." Pa.C.S. § 1302(b)(6). These potential duplicate registrations therefore warrant further investigation.

5. Placeholder or Missing Registration Data

Our research further identified nearly 1,400 registrations that omit or use placeholders for important data, including dates of birth and dates of registration. Registration files with incomplete data can make it difficult to remove ineligible registrants, such as when matching key registration data to data contained in a death record. Placeholder data on the other hand is

4

inaccurate data, is easily identified, and should be corrected using available tools. Purposely maintaining a voter roll that is inaccurate and incorrect is a violation of the NVRA.

6. <u>Corrupted Residence Data</u>

Some registrations appear to provide Allegheny County street addresses for the residence, but list a state other than Pennsylvania. Others copy out of state or country mailing addresses into the intended Pennsylvania address fields. Whether these are glitches or something else, they should be fixed so that registration data is current and accurate.

7. <u>Implausibly Low Number of Inactive Voters Removed</u>

Allegheny County must remove registrants who fail to respond to address confirmation mailings and thereafter fail to vote in two consecutive general elections. 52 U.S.C. § 20507(a)(4)(B); Pa.C.S. § 1901(b)-(d). On the 2018 Election Administration and Voting Survey published by the U.S. Election Assistance Commission, Allegheny County reported that it removed only 72 such registrants. Such an implausibly low removal rate indicates Allegheny County is not complying with the aforementioned removal procedures as required by law.

**A thumb drive that includes the registrations referenced in this notice letter has been mailed to your office.**

**III. Request for Inspection of Records**

Section 20507(i) of the NVRA requires your office to make available for public inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

<u>Initial Requests</u>

1. Records or reports detailing the:
    a. number of new registration applications received for years 2014 to data;
    b. number of non-duplicate rejected or invalid registrations received/processed for years 2014 to date;
    c. the number of duplicate registrations identified and processed for merging/ "purging" for years 2014 to date;
    d. the number of registrant name or address changes for years 2014 to date; and
    e. the number of pre-existing registrants who moved into from elsewhere in Allegheny County for years 2014 to date.

2. Records indicating processes, policies, or procedures governing the detection and handling of registration records that appear to be duplicated.

3. Records indicating processes, policies, or procedures governing the detection and handling of deceased registrants.

4. Records or reports detailing the number of registrants (delineating between active and inactive) able to participate in the following elections:
   a. November 4, 2014;
   b. November 8, 2016;
   c. November 6, 2018; and,
   d. April 28, 2020

5. Records or reports detailing the number of confirmation notices sent to registrants due to inactivity or evidence of outdated address for the years 2014 to date.
   a. Records or reports detailing the number of notices received back by your office confirming registration for the years 2014 to date.
   b. Records or reports detailing the number of notices received back by your office asking that the registration in question should be invalidated or removed for the years 2014 to date.
   c. Records or reports detailing the number of notices returned back to your office as undeliverable for the years 2014 to date.
   d. Records or reports detailing the number of notices whose statuses were unknown for the years 2014 to date.

6. Records or reports indicating the total number of records re-classified as INACTVE for the years 2014 to date.

7. Records or reports detailing the total number of registrants removed from the rolls for the years 2014 to date.
   a. Records or reports detailing the number of registrants removed due to relocation outside of your jurisdiction for the years 2014 to date.
   b. Records or reports detailing the number of registrants removed due to death for the years 2014 to date.
   c. Records or reports detailing the number of registrants removed due to official declaration of mental incompetence for the years 2014 to date.
   d. Records or reports detailing the number of registrants removed due to requests from registrants or their relatives/agents for any reason other than mental capacity, death, relocation, or eligibility for the years 2014 to date.

8. Records or reports detailing the number of applicants without the requisite Social Security or driver's license numbers whom are instead assigned unique identifiers pursuant to 52 U.S.C. § 21083(5)(A)(ii) and related state statutes/rules for the years 2014 to date.

9. Records or reports detailing the number of applicants providing unverifiable or invalid Social Security or driver's license numbers identified pursuant to 52 U.S.C. § 21083(5)(A)(iii) and related state statutes/rules for the years 2014 to date. These records would ideally contain indications as to which identifiers given were flagged for validity (without disclosing the actual ID numbers) with corresponding records revealing actions taken thereafter by the voter registrar to cure or resolve the discrepancies.

10. Procedural guides or narrative descriptions governing when and how your Office is allowed to enter placeholder data within a registration file in the absence of data supplied by the prospective or current registrant (e.g. date of birth, name(s), date of registration, etc.).

11. A copy of the "SURE Survey" completed by Allegheny County in connection with the Performance Audit conducted by Department of the Auditor General.[4]

Pursuant to Section 20507(i) of NVRA, I request an opportunity to inspection such records when we meet to discuss a remedial plan, or at another mutually agreeable time.

**IV.     Request for Meeting**

Our representatives are available to meet with you to discuss our research and a remedial plan on the following dates:

- January 16, 2020
- January 17, 2020
- January 21, 2020

Please let us know which date you prefer.

Should you need to contact the Foundation regarding this matter, please contact me at lchurchwell@publicinterestlegal.org. Thank you for your service on this matter.

Sincerely,

Logan Churchwell
Communications & Research Director
Public Interest Legal Foundation
lchurchwell@publicinterestlegal.org

cc: **Honorable Kathy Boockvar**
Secretary of the Commonwealth of Pennsylvania
302 North Office Building, 401 North Street
Harrisburg, PA 17120
Fax: (717) 787-1734

---

[4] Performance Audit Report, Pennsylvania Department of State, Statewide Uniform Registry of Electors, Dec. 19, 2019 at Appendix H (page 173), available at https://www.paauditor.gov/Media/Default/Reports/Department%20of%20State_SURE%20Audit%20Report%2012-19-19.pdf (last accessed Jan. 6, 2020).