## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

Public Interest Legal Foundation,

        *Plaintiff*,

v.

David Voye, Manager of Elections for
Allegheny County, and Rich Fitzgerald,
Bethany Hallam and Samuel DeMarco III, as
Members of the Allegheny County Board of
Elections in their official capacities,

        *Defendants*.

Civ. No. 20-cv-00279 (CRE)

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY NON-PARTIES LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, LEAGUE OF WOMEN VOTERS OF GREATER PITTSBURGH, INC., ONE PENNSYLVANIA, AND THE PITTSBURGH CHAPTER OF THE A. PHILIP RANDOLPH INSTITUTE

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  Introduction ........................................................................................................... 1

II.  Background ............................................................................................................ 2

III.  Applicants Are Entitled To Intervene As a Matter of Right ............................ 5

   A.  The Motion to Intervene is Timely ............................................................. 5

   B.  Applicants Have Substantial Interests in the Underlying Litigation ........... 7

   C.  Disposition of this Case Is Likely To Impair Applicants' Interests ........... 9

   D.  The Existing Defendants May Not Adequately Represent Applicants' Interests ...... 12

IV.  In The Alternative, the Court Should Grant Permissive Intervention ........................... 14

CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Alabama Legislative Black Caucus v. Alabama,*
   575 U.S. 254 (2015) ................................................................................................ 7

*Alexander v. Rendell,*
   246 F.R.D. 220 (W.D. Pa. 2007) ............................................................................ 8

*American Civil Rights Union v. Philadelphia City Commissioners,*
   872 F.3d 175 (3d Cir. 2017) ................................................................................... 1

*American Farm Bureau Federation v. Environmental Protection Agency,*
   278 F.R.D. 98 (M.D. Pa. 2011) ...................................................................... 12, 16

*Appleton v. Commissioner of Internal Revenue,*
   430 F. App'x 135 (3d Cir. 2011) .......................................................................... 15

*Arcia v. Florida Secretary of State,*
   772 F.3d 1335 (11th Cir. 2014) ........................................................................... 10

*Association for Fairness in Business, Inc. v. New Jersey,*
   193 F.R.D. 228 (D.N.J. 2000) .............................................................................. 14

*Bellitto v. Snipes,*
   No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617 (S.D. Fla. Mar. 30, 2018) ............ 10, 15

*Bellitto v. Snipes,*
   No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016) ............................ 9

*Blunt v. Lower Merion School District,*
   767 F.3d 247 (3d Cir. 2014) ................................................................................... 7

*Brody By & Through Sugzdinis v. Spang,*
   957 F.2d 1108 (3d Cir. 1992) ..................................................................... 9, 12, 14

*Bush v. Gore,*
   531 U.S. 98 (2000) ................................................................................................. 8

*Chester Water Authority v. Susquehanna River Basin Commission,*
   No. 14-cv-1076, 2014 WL 3908186 (M.D. Pa. Aug. 11, 2014) ............................ 14

*Choike v. Slippery Rock University of Pennsylvania of State System of Higher Education,*
   297 F. App'x 138 (3d Cir. 2008) ............................................................................ 6

*Common Cause Indiana v. Lawson,*
   327 F. Supp. 3d 1139 (S.D. Ind. 2018) ................................................................. 8

*Common Cause/New York v. Brehm*,
  344 F. Supp. 3d 542 (S.D.N.Y. 2018) ................................................................. 8

*Commonwealth of Pennsylvania v. President United States of America*,
  888 F.3d 52 (3d Cir. 2018) ................................................................................ 7

*Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
  No. 09-1572, 2017 WL 1376298 (W.D. Pa. Apr. 17, 2017) .............................. 6

*Constand v. Castor*,
  No. 15-5799, 2016 WL 5681454 (E.D. Pa. Oct. 3, 2016) ................................. 5

*Deutsche Bank National Trust Co. v. Bendex*,
  No. 16-cv-0432, 2016 WL 6648175 (M.D. Pa. Nov. 10, 2016) ........................ 12

*Diaz v. Southern Drilling Corp.*,
  427 F.2d 1118 (5th Cir. 1970) ........................................................................... 7

*Donaldson v. United States*,
  400 U.S. 517 (1971) .......................................................................................... 7

*Harris v. Pernsley*,
  820 F.2d 592 (3d Cir. 1987) ................................................................... 7, 8, 11

*Hoots v. Pennsylvania*,
  672 F.2d 1133 (3d Cir. 1982) ..................................................................... 12, 14

*Hyland v. Harrison*,
  No. 05-cv-00162, 2006 WL 288247 (D. Del. Feb. 7, 2006) ............................ 15

*In re Community Bank of Northern Virginia*,
  418 F.3d 277 (3d Cir. 2005) .............................................................................. 5

*In re Fine Paper Antitrust Litigation*,
  695 F.2d 494 (3d Cir. 1982) .............................................................................. 6

*In re Mondelblatt*,
  350 B.R. 1 (Bankr. E.D. Pa. 2006) .................................................................. 16

*Indiana State Conference of NAACP v. Lawson*,
  326 F. Supp. 3d 646 (S.D. Ind. 2018) ............................................................. 11

*Islamic Society of Basking Ridge v. Township of Bernards*,
  681 F. App'x 110 (3d Cir. 2017) ........................................................................ 5

*Kleissler v. United States Forest Service*,
  157 F.3d 964 (3d Cir. 1998) ................................................... 5, 11, 13, 16

*Kobach v. United States Election Assistance Commission*,
No. 13-cv-4095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013)...................................13

*League of Women Voters of Missouri v. Ashcroft*,
336 F. Supp. 3d 998 (W.D. Mo. 2018).....................................................................8

*League of Women Voters of Pennsylvania v. Pennsylvania*,
175 A.3d 282 (Pa. 2018) .........................................................................................3

*Liberty Mutual Insurance Co. v. Treesdale, Inc*,
419 F.3d 216 (3d Cir. 2005)..................................................................................2, 5

*Livingston v. Berger*,
No. 19-cv-00012, 2020 WL 798015 (D.V.I. Feb. 18, 2020)...................................14

*Michaels Stores, Inc. v. Castle Ridge Plaza Associates*,
6 F. Supp. 2d 360 (D.N.J. 1998) .............................................................................7

*Mountain Top Condo. Association v. Dave Stabbert Master Builder, Inc.*,
72 F.3d 361 (3d Cir. 1995)...............................................................................6, 7, 8

*National Wildlife Federation v. Ruckelshaus*,
99 F.R.D. 558 (D.N.J. 1983) ..................................................................................15

*North Carolina State Conference of the NAACP v. North Carolina State Board of Elections*,
No. 16-cv-1274, 2016 WL 6581284 (M.D.N.C. Nov. 4, 2016)..................................9

*Pierce v. Allegheny County Board of Elections*,
324 F. Supp. 2d 684 (W.D. Pa. 2003) ....................................................................8

*PPL Energyplus, LLC v. Solomon*,
No. 11-cv-00745, 2011 WL 13128622 (D.N.J. July 19, 2011)...............................14

*Prudential Property & Casualty Insurance Co. v. Leach*,
No. 03-cv-6352, 2004 WL 1243763 (E.D. Pa. June 7, 2004) ..................................6

*Reynolds v. Sims*,
377 U.S. 533 (1964) .................................................................................................8

*Seneca Resources Corp. v. Township of Highland, Elk County, Pennsylvania*,
863 F.3d 245 (3d Cir. 2017)...................................................................................12

*Shipyard Associates, L.P. v. City of Hoboken*,
No. 14-cv-1145, 2014 WL 6685467 (D.N.J. Nov. 26, 2014) ..................................14

*Smith v. Pangilinan*,
651 F.2d 1320 (9th Cir. 1981)................................................................................11

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) .................................................................................... 7

*Trbovich v. United Mine Workers of America*,
   404 U.S. 528 (1972) ...................................................................................... 12

*U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Insurance Co.*,
   239 F.R.D. 404 (W.D. Pa. 2006) ................................................................... 6

*United States v. Alcan Aluminum, Inc.*,
   25 F.3d 1174 (3d Cir. 1994) ........................................................................... 7

*United States v. Georgia*,
   19 F.3d 1388 (11th Cir. 1994) ....................................................................... 5

*United States v. Territory of the Virgin Islands*,
   748 F.3d 514 (3d Cir. 2014) ......................................................................... 12

*Verizon Pennsylvania, Inc. v. Pennsylvania Public Utilities Commission*,
   No. 08-cv-3436, 2008 WL 11374369 (E.D. Pa. Oct. 23, 2008) ............... 5, 6

*Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) ........................... 5

*Yock v. Department of Public Welfare of Pennsylvania*,
   701 F.3d 938 (3d Cir. 2012) ......................................................................... 14

**Statutes**

52 U.S.C. § 20507 ............................................................................................. 2

**Rules**

Fed. R. Civ. P. 24 ...................................................................................... 13, 15

**Other Authorities**

Adam Brandolph, *Voters report problems with long lines confusion over voter ID law*, Trib.
   Live (Nov. 6, 2012), https://archive.triblive.com/news/voters-report-problems-with-long-
   lines-confusion-over-voter-id-law/ .............................................................. 10

Daniel Moore, *Turnout strong, magnifying polling location mishaps*, Pittsburgh Post-
   Gazette (Nov. 6, 2018), https://www.wesa.fm/post/long-lines-minor-problems-reported-
   allegheny-county-polling-sites#stream/0 ..................................................... 10

H.R. Rep. No. 103-9 .......................................................................................... 1

The League of Women Voters of Pennsylvania and League of Women Voters of Greater Pittsburgh, Inc. (collectively, the "League"), One Pennsylvania ("One PA"), and the Pittsburgh chapter of the A. Philip Randolph Institute ("APRI," and, together with the League and One PA, "Applicants"), submit this memorandum in support of their Motion to Intervene as defendants ("Motion") in this case.

## I.     Introduction

In this lawsuit, the Public Interest Legal Foundation ("Plaintiff" or "PILF") seeks an order compelling Allegheny County, Pennsylvania to remove as many as 15,500 voters from its registration lists that PILF claims should be taken off the County's rolls. *See* Compl. ¶¶ 19, 29, 32, 34, 37. Plaintiff bases its claim on unverified data that it has itself generated. And it relies on the National Voter Registration Act of 1993 ("NVRA")—a statute designed in part to remedy the problem of "'selective purges'" that might "'discourage participation'"[1]—to say that election administrators must take PILF at its word.

Applicants are entitled to intervention as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure. They represent the interests of organizational members who are eligible registered voters in Allegheny County, each of whom has a cognizable interest in remaining on the voter lists and depend upon the proper enforcement of the NVRA. The Applicants also retain an abiding interest in promoting active participation in government through voting and have devoted substantial resources towards this goal. However, the remedies Plaintiff seeks would require Allegheny County to remove thousands of voters from registration lists based on unverified data that it has supplied to the County.

---

[1] *Am. Civil Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 178 n.12 (3d Cir. 2017) (quoting H.R. Rep. No. 103-9, at 2 (1993)).

Those remedies are at best unwarranted and may well be unlawful. The NVRA requires election administrators to conduct a "reasonable effort" to remove ineligible voters from their lists; it does not instruct them to enforce *any* of the procedures that Plaintiff presumably wants Allegheny County to adopt. *See* 52 U.S.C. § 20507(a)(4). If granted, the relief that Plaintiff seeks would jeopardize the voting rights of Applicants' members and the many voters they have registered to vote by placing them in imminent and realistic risk that they will be erroneously removed from active voter lists. And it would impair Applicants' substantial legal interests by forcing them to expend additional resources (*e.g.*, on public education and re-registration of voters) to ensure that eligible voters are not disenfranchised as a result. As set forth below, Applicants are thus entitled to intervene as a matter of right because they plainly meet the applicable requirements: "1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the[ir] interest will be impaired or affected . . . and 4) [] the existing parties to the action do not adequately represent [their] interests." *Liberty Mut. Ins. Co. v. Treesdale, Inc*, 419 F.3d 216, 220 (3d Cir. 2005).

Alternatively, Applicants should be permitted to intervene under Rule 24(b)(2) because there is no risk that granting the motion would delay or prejudice the orderly adjudication of Plaintiff's claims.

## II.      Background

The League of Women Voters of Pennsylvania is a nonpartisan statewide organization formed in August 1920, shortly after the Nineteenth Amendment granted women suffrage in November 1918. The League is dedicated to encouraging its members and the people of Pennsylvania to exercise their right to vote, as protected by the U.S. Constitution, Pennsylvania Constitution, and federal and state law. Its mission is to empower voters and defend democracy.

The League promotes political responsibility through informed and active participation in government and acts on selected public issues. It impacts public policies, promotes citizen education, and makes democracy work by, among other things, removing unnecessary barriers to full participation in the electoral process. The League has pursued legal action against Pennsylvania officials to achieve these goals.[2]

Currently, the Pennsylvania statewide League has 32 local leagues and over 2,100 members. The League leads voter registration drives, distributes information about the electoral process, promotes electoral laws and practices that encourage voter participation, and conducts election protection on election days, among other activities.

Like the Pennsylvania League, the League of Women Voters for Greater Pittsburgh, Inc. is a nonpartisan political organization that encourages informed and active participation in government. The Greater Pittsburgh League has over 320 members who are actively engaged in voter registration drives, encouraging civic participation and registration at naturalization ceremonies, educating voters on public policy issues, conducting non-partisan candidate forums for local and statewide elections (including streaming video), and supporting the education of the public in new voting equipment to be used for the first time in the primary election this spring. In 2019, the Greater Pittsburgh League held over 50 registration events at community events, fairs, senior citizen residences, high schools, colleges, libraries, and both administrative and judicial naturalization ceremonies.

One PA is a nonpartisan, multi-issue statewide membership organization dedicated to remedying fundamental economic justice and political participation problems in Pennsylvania.

---

[2] *See, e.g.*, *League of Women Voters of Pa. v. Pennsylvania*, 175 A.3d 282, 284 (Pa. 2018) (invalidating 2011 congressional map); Compl., *Common Cause of Pa. v. Pennsylvania*, 2005 WL 3136666, 05-cv-2056 (M.D. Pa. Oct. 6, 2005), ECF No. 1 (along with Common Cause and individual plaintiffs, challenging Pennsylvania statute conferring pay raise to legislators, judges, and other elected officials).

One PA's mission is to amplify voices and prioritize leadership development in underpaid and underserved communities in Pennsylvania, including by registering and engaging neglected voters. One PA specifically works to empower voters in "noncompetitive" political geographies that receive less national attention and resources, including various wards in Allegheny County. In 2019, One PA had 875 members statewide; in 2018, it registered close to 7,000 voters.

The Pittsburgh APRI was founded in 1968. APRI is dedicated to developing programs that will extend democracy to those who have been traditionally disfranchised or discouraged from participating in the political system, strengthening political alliances needed to assure democratic social change, and promoting social and economic programs that will improve the lives of all Americans. To further its work to strengthen the democratic process, APRI has conducted a phone bank designed to share information with Southwestern Pennsylvania residents about the recent voter ID legislation; carried out surveys to determine issues important to residents in minority and underserved communities; worked to educate residents of target communities about the need to register to vote; and canvassed residents in target communities in an effort to increase participation in all elections.

The League, One PA, and APRI apply to intervene in this action to protect their interest against the removal of eligible voters, including thousands of their members and voters they may have registered or assisted in navigating the registration process. If Plaintiff succeeds in compelling unwarranted and unreasonable "list maintenance" procedures, Applicants would in turn expend considerable resources to prevent the disenfranchisement by redoubling their efforts to reach and reregister eligible and previously registered voters who are erroneously removed.

### III.     Applicants Are Entitled To Intervene As a Matter of Right

In the Third Circuit, a party is entitled to intervene upon establishing: "'(1) a timely application for leave to intervene, (2) a sufficient interest in the underlying litigation, (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent [its] interests.'" *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 681 F. App'x 110, 111–12 (3d Cir. 2017) (quoting *Liberty Mut.*, 419 F.3d at 220).  Courts construe these factors consistent with the "policy preference, 'as a matter of judicial economy, favor[ing] intervention over subsequent collateral attacks.'" *Verizon Pa., Inc. v. Pa. Pub. Util. Comm'n*, No. 08-cv-3436, 2008 WL 11374369, at *1 (E.D. Pa. Oct. 23, 2008) (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998)).

The Applicants plainly satisfy each of these considerations.  The Court should permit their intervention as a matter of right.  *See Constand v. Castor*, No. 15-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) ("Where Rule 24(a) contains mandatory language—the court 'must permit' intervention, so long as certain conditions are satisfied . . . ."); *see also United States v. Georgia*, 19 F.3d 1388, 1393 (11th Cir. 1994) ("Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion.").

A.  The Motion to Intervene is Timely

In assessing whether intervention is timely, the Third Circuit has instructed district courts to consider three factors: "'(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.'" *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005)).  Ultimately, "[t]he timeliness of a motion to intervene is determined from all the circumstances" and in the

court's "sound discretion." *Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*, 297 F. App'x 138, 140 (3d Cir. 2008) (quoting *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982)). However, courts "should be reluctant to dismiss a request for intervention as untimely" when sought as of right, because the "would-be intervenor may be seriously harmed if [] not permitted to intervene." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

The Motion is timely. Applicants learned of the Complaint on or about February 25, 2020, one day after Plaintiff initiated this litigation. They subsequently filed this motion on March 2, a mere six days later. Only the Plaintiff's opening papers have been filed to date, and no hearing before this Court has been scheduled. Courts routinely hold that requests to intervene made at such preliminary stages are timely for purposes of Rule 24. *See, e.g.*, *Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-1572, 2017 WL 1376298, at *5 (W.D. Pa. Apr. 17, 2017) (motion to intervene timely where "discovery not yet closed [and] no schedule for summary judgment motions or trial [was] set . . . . Given the relatively early stage in the proceedings"); *Verizon Pa., Inc.*, 2008 WL 11374369, at *1 (granting intervention sought in litigation's "early stages," after just pleadings filed); *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Mar. Ins. Co.*, 239 F.R.D. 404, 412 n.9 (W.D. Pa. 2006) ("no dispute" over timeliness where "case is still in its initial stages [and] there have been no filings beyond the initial pleadings"); *Prudential Prop. & Cas. Ins. Co. v. Leach*, No. 03-cv-6352, 2004 WL 1243763, at *1 n.1 (E.D. Pa. June 7, 2004) (motion to intervene under Rule 24(a)(2) granted "as it was made at an early stage in the litigation").

Nor will the Applicants' prompt intervention at this early juncture alter the issues presented, delay the timely advancement of the action, or otherwise harm the parties. "[T]he

stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties . . . ." *Mountain Top Condo. Ass'n*, 72 F.3d at 369–70. Where "'few legally significant events have occurred,'" courts have generally "not found prejudice." *Cmty. Vocational Schs. of Pittsburgh*, 2017 WL 1376298, at \*5 (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970)). Here there is no delay to even speak of and no legally significant events have occurred beyond the filing of the Complaint. With this litigation in its infancy, the parties cannot plausibly argue that granting the instant application for intervention would cause them prejudice. *See Michaels Stores, Inc. v. Castle Ridge Plaza Assocs.*, 6 F. Supp. 2d 360, 364 (D.N.J. 1998) ("Because the motion was filed at such an early stage in the litigation, the original parties to the action cannot have suffered prejudice as a result.").

B. Applicants Have Substantial Interests in the Underlying Litigation

The Applicants also have a sufficient interest in the litigation that is "significantly protectable."[3] *Donaldson v. United States*, 400 U.S. 517, 531 (1971). For purposes of Rule 24(a)(2), such an interest is one that is "legal [and] distinguished from interests of a general and indefinite character." *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987). It is "recognize[d] as belonging to or being owned by the [proposed intervenor]." *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 (3d Cir. 1994). An "'applicant must demonstrate that there is a tangible threat to [such] a legally cognizable interest to have the right to intervene.'" *Mountain Top*

---

[3] Relatedly and for the reasons discussed *infra*, Applicants also have Article III standing to participate in the litigation as defendants, whether on behalf of their members or in their own right. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 269 (2015); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285 (3d Cir. 2014). In any event, Applicants would not have to separately establish Article III standing if Allegheny County defends against Plaintiff's NVRA claims by asking the Court to dismiss them. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (holding "intervenor of right must have Article III standing in order to pursue relief that is *different* from that which is sought by a party with standing" (emphasis added)); *Commonwealth of Pa. v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018) ("Because [non-parties] moved to intervene as defendants and seek the same relief as the federal government, they need not demonstrate Article III standing.").

*Condo. Ass'n*, 72 F.3d at 366 (quoting *Harris*, 820 F.2d at 601)).  Separately, courts "'have found that an applicant has a sufficient interest to intervene when the action will have a significant *stare decisis* effect on the applicant's rights . . . .'"  *Alexander v. Rendell*, 246 F.R.D. 220, 230 (W.D. Pa. 2007) (quoting *Harris*, 820 F.2d at 601).

There can be no legitimate dispute that the Applicants have a substantial, legally-cognizable interest in protecting their members' voter registrations, ensuring all eligible voters remain properly registered, and in preserving the fruits of their own registration efforts.  "The right of qualified electors to vote . . . is recognized as a fundamental right," *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 694–95 (W.D. Pa. 2003); it is "cherished in our nation because it 'is preservative of other basic civil and political rights,'" *id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 562 (1964)).  Moreover, the right "extends to all phases of the voting process," *id.*, applying "equally to the 'initial allocation of the franchise' as well as 'the manner of its exercise,'" *id.* (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000)).

For that reason, federal courts routinely consider NVRA claims based on the cognizable interest that organizations that engage in voter registration activities have in protecting their members' registrations and ensuring that eligible voters are not improperly removed from voter lists or otherwise prevented from voting.  *See, e.g.*, *Common Cause/N.Y. v. Brehm*, 344 F. Supp. 3d 542, 558–59 (S.D.N.Y. 2018) (holding organization stated plausible NVRA claim against removal of inactive voters from voter lists); *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1001 (W.D. Mo. 2018) (enjoining Missouri election officers' failure to provide certain change-of-mailing-address transaction registration services); *Common Cause Ind. v. Lawson*, 327 F. Supp. 3d 1139, 1156 (S.D. Ind. 2018) (enjoining Indiana voter list maintenance program under NVRA); *N.C. State Conf. of the NAACP v. N.C. State Bd. of Elections*, No. 16-

cv-1274, 2016 WL 6581284, at *11 (M.D.N.C. Nov. 4, 2016) (enjoining "mass cancelations" of voter registrations in at least three North Carolina counties). By extension, courts have allowed voter registration organizations like Applicants to intervene in cases exactly like this one, in order to oppose plaintiffs' efforts to compel jurisdictions into aggressively purging their voter rolls. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2–*3 (S.D. Fla. Sept. 21, 2016) (granting union's motion to intervene where "its interests and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs"); *Va. Voter's All., Inc. v. Leider*, No. 16-cv-394 (E.D. Va. June 17, 2016), ECF No. 25 (granting League of Women Voters of Virginia's motion to intervene in NVRA suit seeking to compel list maintenance).

Each election cycle Applicants expend considerable resources towards ensuring that all eligible voters in Allegheny County are able to exercise their right to vote. The League, One PA, and APRI are committed to eliminating barriers to voting and increasing civic engagement, especially among vulnerable and "politically invisible" communities who have been traditionally disenfranchised. Voter registration and education are mission-critical elements of those goals. Applicants' interest in ensuring that all eligible voters are registered and, crucially, that they remain on voter registration lists is concrete, protectable, and substantial.

C. Disposition of this Case Is Likely To Impair Applicants' Interests

"Once an applicant for intervention has established that he or she possesses a sufficient legal interest in the underlying dispute, the applicant must also show that this claim is in jeopardy in the lawsuit." *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992).

Plaintiff's requested relief would jeopardize Applicants' interests. Plaintiff requests an order that could have the effect of requiring Allegheny County to conduct unwarranted voter purges, above and beyond the reasonable voter list maintenance procedures that the County already undertakes pursuant to the NVRA and state law. While Plaintiff claims it seeks to compel "reasonable" list maintenance efforts, the Complaint nowhere specifies what those efforts must include. In similar cases Plaintiff has pursued in other jurisdictions, however, Plaintiff has demanded practices that have been shown to sweep in eligible voters. For example, in a case against Broward County, Florida, in which Plaintiff served as counsel, Plaintiff sought to compel the county to use information from the federal Systematic Alien Verification for Entitlements system to identify non-citizens, despite the fact that the program was not designed for that purpose and Florida had previously been barred from using it over concerns as to its accuracy. *See Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *38–*39 (Mar. 30, 2018); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014). Thus, the order Plaintiff seeks would almost certainly result in the improper removal of eligible voters, threatening the voting rights of Applicants' members, members of the communities whose interests they serve, and voters they have expended their time and resources to register. It would squarely impact the proposed intervenors' interests in maintaining their voter registration efforts and protecting their members' voter registrations, threatening their missions. And it would compel the Applicants to devote substantial resources to address its effects through public education, registration of voters wrongly removed from voter lists should Plaintiff prevail here, and Election Day monitoring to ensure that the relief Plaintiff seeks does not result in other harmful effects, such as long voter lines—a recurring concern in Allegheny County.[4]

---

[4] *See, e.g.*, Daniel Moore, *Turnout strong, magnifying polling location mishaps*, Pittsburgh Post-Gazette (Nov. 6, 2018) (citing long lines at Squirel Hill polling place), https://www.wesa.fm/post/long-lines-

These concerns are amplified in relation to underrepresented minority communities in Allegheny County, which Applicants are committed to serve. "Historically . . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018). Applicants have worked hard to remedy those practices, in part, by ensuring that their registration and education efforts specifically reach vulnerable or underserved minority communities. The putative intervenors' interest in ensuring that Plaintiff's proposed "list maintenance" does not harm those communities is significant.

In addition, this lawsuit impairs Applicants' interests by threatening to create an adverse *stare decisis* effect. *See Harris*, 820 F.2d at 601. The NVRA provides private parties a right of action to enforce its terms. 52 U.S.C. § 20510(b). Applicants would certainly sue if Allegheny County undertook, on its own, the unreasonable list maintenance practices that Plaintiff would have the County adopt. *See* Compl. at 18-19. But their opportunity to challenge those same procedures would be foreclosed if the County is instead ordered to implement them as a consequence of this litigation. "[A] contrary determination in the present case" to what Applicants would argue before a court in a standalone NVRA case "would have a stare decisis effect on [that] litigation, leaving the proposed intervenors without legal recourse to protect their interest." *Kleissler*, 157 F.3d at 980 (Becker, C.J., concurring). Applicants' motion thus presents "appropriate circumstances" in which "*stare decisis* . . . suppl[ies] the requisite practical

---

minor-problems-reported-allegheny-county-polling-sites#stream/0; Adam Brandolph, *Voters report problems with long lines confusion over voter ID law*, Trib. Live (Nov. 6, 2012) (reporting "almost a two hour wait to vote" in Franklin Park polling place, which caused "many people pull up outside and turn away when they saw the line," according to Collier Police Chief), https://archive.triblive.com/news/voters-report-problems-with-long-lines-confusion-over-voter-id-law/.

impairment warranting intervention of right." *Smith v. Pangilinan*, 651 F.2d 1320, 1325 (9th Cir. 1981).

Further, Applicants' rights stand to "'be affected by a proposed remedy'" in this case. *Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 257 (3d Cir. 2017) (quoting *Brody*, 957 F.2d at 1123)). For instance, the present action might result in a court-approved consent decree requiring Allegheny County to adopt list maintenance procedures that would adversely impact the rights of eligible, registered voters, including Applicants' members. Such a consent decree would directly imperil Applicants' legal interests, and while the proposed intervenors could—in theory—bring a separate suit to block its operation, that result would thwart "the policy preference . . . favor[ing] intervention over subsequent collateral attacks.'" *Deutsche Bank Nat'l Trust Co. v. Bendex*, No. 16-cv-0432, 2016 WL 6648175, at *3 (M.D. Pa. Nov. 10, 2016).

D. <u>The Existing Defendants May Not Adequately Represent Applicants' Interests</u>

A proposed intervenor must prove that its interest is not adequately represented by the existing parties in the litigation, but this burden is "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982). It is sufficient to show that "representation of [the] interest *may* be inadequate." *Trbovich*, 404 U.S. at 538 n.10 (emphasis added) (internal quotation marks omitted). "The possibility that the interests of the applicant and the parties may diverge 'need not be great," *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011) (quotations omitted), and a proposed intervenor need only show that "'although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper

attention,'" *United States v. Territory of V.I.*, 748 F.3d 514, 519–20 (3d Cir. 2014) (quoting *Brody*, 957 F.2d at 1123).

Applicants meet this standard because their interests differ significantly from those of Allegheny County. To be sure, Defendants are responsible for the general management and accuracy of the County's voter registration lists, including oversight of list maintenance programs. *See* Compl. ¶¶ 5–7. But the Applicants have distinct and particular interests in ensuring that eligible, registered voters remain on the rolls and in the effectiveness of their own voter registration efforts.

For example, another district court specifically recognized similar interests in allowing the League of Women Voters of the United States, League of Women Voters of Arizona, and League of Women Voters of Kansas to intervene in a challenge to the Election Assistance Commission's (EAC) "mail voter registration application form," where plaintiffs sought an order compelling EAC to modify the form to add a proof-of-citizenship requirement. *See Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) ("The Court finds that all Applicants have clearly shown their interests in either increasing participation in the democratic process, or protecting voting rights . . . ."). Of particular importance, the court in *Kobach* recognized that the applicants' viable interests could reasonably diverge from those of "existing government Defendants" who held "a duty to represent the public interest [and] may not adequately represent Applicants' specific interests." *Id.*

The *Kobach* court's reasoning applies here. The Third Circuit has made clear that the presumption that public officials will adequately represent a policy that they are charged with administering often yields to the more specific interests of an aspiring private intervenor. *See Kleissler*, 157 F.3d at 972 ("[W]hen an agency's views are necessarily colored by its view of the

public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light."); *see also Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 958–59 (3d Cir. 2012). Accordingly, district courts in this circuit have frequently concluded that governmental entities will not adequately represent "more parochial" private interests. *See, e.g.*, *Livingston v. Berger*, No. 19-cv-00012, 2020 WL 798015, at *4–*5 (D.V.I. Feb. 18, 2020); *Shipyard Assocs., L.P. v. City of Hoboken*, No. 14-cv-1145, 2014 WL 6685467, at *4 (D.N.J. Nov. 26, 2014); *Chester Water Auth. v. Susquehanna River Basin Comm'n*, No. 14-cv-1076, 2014 WL 3908186, at *5 (M.D. Pa. Aug. 11, 2014); *PPL Energyplus, LLC v. Solomon*, No. 11-cv-00745, 2011 WL 13128622, at *2–*3 (D.N.J. July 19, 2011); *Assoc. for Fairness in Bus., Inc. v. New Jersey*, 193 F.R.D. 228, 231–32 (D.N.J. 2000). The Court should reach the same result.

In sum, Applicants meet all the criteria for intervention as of right under Fed. R. Civ. P. 24(a), and the Court should grant their Motion.

## IV. In The Alternative, the Court Should Grant Permissive Intervention

Should the Court find the requirements for intervention as of right have not been satisfied, it should use its broad discretion to grant permissive intervention. A court may grant permissive intervention when the motion to intervene is timely and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The decision whether or not to do so is "highly discretionary." *Brody*, 957 F.2d at 1115. And even where the district court denies intervention as of right, permissive intervention might be proper or warranted. *See Hoots*, 672 F.2d at 1136.

Applicants intend to defend against Plaintiff's claims that Allegheny County has failed to conduct NVRA-compliant list maintenance and that federal law requires the County to cull

thousands of additional registered voters from its lists of electors to bring the voter registration

rate down to a level that Plaintiff deems acceptable. Those allegations are at the heart of the

main action: the fundamental questions of fact and law that the named parties must address will

accordingly be the same if the Applicants are allowed to intervene. Indeed, while Applicants

expect to present a distinct perspective on the legal and factual issues before the Court, their

views will likely complement or amplify Defendants' arguments against Plaintiff's claims. For

example, Applicants, their affiliates in sister states, and their counsel have litigated numerous

cases arising under the provisions of the NVRA at issue here, and have experience analyzing

claims such as those asserted here and the methodology behind them. *See*, *e.g.*, *Bellitto*, 2018

U.S. Dist. LEXIS 103617; *Va. Voter's All., Inc. v. Leider*, No. 16-cv-394. Applicants will draw

on this national experience and their history representing populations most likely to be impacted

by the relief Plaintiff seeks in framing their defense of this litigation. By any proper measure,

then, the Applicants satisfy the baseline commonality requirement of Rule 24(b)(2). *See*

*Appleton v. Comm'r of Internal Revenue*, 430 F. App'x 135, 138–39 (3d Cir. 2011) (holding Tax

Court abused its discretion by denying permissive intervention and explaining that "identity of

interest [with named parties] should only be a bar to intervention when it [causes] 'undue delay'

or 'prejudice'"); *Hyland v. Harrison*, No. 05-cv-00162, 2006 WL 288247, at *6 (D. Del. Feb. 7,

2006) (permissive intervention appropriate where applicant's motion "based on the same facts

and circumstances as this case, seeks substantially the same relief, and raises similar legal

issues").

Moreover, district courts in the Third Circuit have recognized that permissive

intervention is particularly appropriate where, as here, proposed intervenors may meaningfully

contribute to the proper development of the factual or legal issues in dispute. *See*, *e.g.*, *Nat'l*

*Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983) ("Other relevant factors [to Rule 24(b) inquiry] include . . . whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the action and to just and equitable adjudication of the legal questions presented."); *see also In re Mondelblatt*, 350 B.R. 1, 10–11 (Bankr. E.D. Pa. 2006) (same).  As noted, the Applicants have deep and undeniable experience educating, registering, and assisting voters in Allegheny County and its constituent communities. They are exceedingly well-placed to vigorously advocate for the rights of Allegheny County voters, including their members and the traditionally marginalized communities they serve.  By contrast, the County's defense will inevitably reflect various interests, some of which could very well diverge from those of the Proposed Intervenors.  The Third Circuit has recognized that intervention is proper in comparable circumstances.  *See Kleissler*, 157 F.3d at 973–74 (noting "straightforward business interests asserted by intervenors" not protected by government agency representing "numerous . . . interests"); *see also Am. Farm Bureau Fed'n*, 278 F.R.D. at 110–11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders).

Finally, granting Applicants' Motion at this stage would not delay or prejudice the adjudication of the original parties' rights.  Fed. R. Civ. P. 24(b).  The single legally significant development in the case thus far has been the filing of Plaintiff's Complaint.  As explained earlier, permitting intervention would not unduly delay or prejudice the adjudication of the original parties, whereas refusing to permit it would almost certainly deprive Applicants of the chance to defend their cognizable, significant, and protectable interests in the litigation.

**CONCLUSION**

For the aforementioned reasons, the Court should grant the Applicants' Motion to

Intervene as of right, or in the alternative, for permissive intervention.


Dated: March 2, 2020

Adriel I. Cepeda Derieux*
Dale E. Ho*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org
dho@aclu.org

Chiraag Bains*
Demos
740 6th Street NW, 2nd Floor
Washington, DC 20001
Tel.: (202) 864-2746
cbains@demos.org

*Pro Hac Vice to be filed

Respectfully submitted,
*/s/ Witold J. Walczak*
Witold J. Walczak
Sara J. Rose
American Civil Liberties Union
of Pennsylvania
P.O. Box 23058
Pittsburgh, PA 15222
Tel.: (412) 681-7736
vwalczak@aclupa.org

Stuart C. Naifeh*
Demos
80 Broad Street, 4th Floor
New York, NY 10004
Tel.: (212) 485-6055
snaifeh@demos.org

*Attorneys for Proposed Defendant-Intervenors*